| | |
|---|---|
| DISTRICT COURT, COUNTY OF BOULDER, COLORADO<br>1777 Sixth Street, Boulder, Colorado 80302 | DATE FILED: March 6, 2023 9:48 AM<br>FILING ID: EBA785FC15CC4<br>CASE NUMBER: 2023CV30166 |
| Plaintiff:<br>**JAMES COLLINS, JR.**<br><br>v.<br><br>Defendants:<br>**TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA** | ▲ **COURT USE ONLY** ▲ |
| **ATTORNEYS FOR PLAINTIFF:**<br>Name:     Jessica B. Prochaska, Reg. No. 46319<br>Address:  Burg Simpson Eldredge Hersh & Jardine, P.C.<br>              40 Inverness Drive East<br>              Englewood, Colorado, 80112<br>Phone No.:  (303) 792-5595<br>Fax No.:     (303) 708-0257<br>E-Mail:       jprochaska@burgsimpson.com | Case No:<br><br>Div: |
| **COMPLAINT AND JURY DEMAND** | |

COMES NOW, Plaintiff James Collins, Jr., by and through his attorneys, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., for his Complaint and Jury Demand, states, alleges, and avers as follows:

## PARTIES

1. Plaintiff James Collins, Jr. (hereinafter Plaintiff Collins) is a citizen and resident of Denver County, Colorado, residing at 1970 Xenia Street, Denver, Colorado 80220.

2. Defendant Travelers Casualty Insurance Company of America (hereinafter "Travelers") is a foreign corporation licensed to do business in the State of Colorado with its principal place of business at One Tower Square, Hartford, Connecticut 06183. Defendant Travelers maintains a registered agent in Colorado at 1900 W. Littleton Blvd., Littleton, Colorado 80120.

**EXHIBIT A**

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado, Article VI, Section 9.

4. The Court has personal jurisdiction over the Defendant Travelers by virtue of the Defendant's operations and presence in Colorado, by its transacting business in or directed at Colorado, by its commission of a tortious act that caused injury and damages in Colorado, and/or by otherwise purposefully availing itself of the benefits and privileges of Colorado law by regular, continuous and systematic contacts with Colorado, and by its commission of tortious acts that caused injury and damages in Colorado to a Colorado resident, pursuant to C.R.S. §13-1-124(1).

5. Venue is proper in this Court, pursuant to C.R.C.P. 98(c)(1) because Defendant Travelers is a nonresident of the State, Defendant conducts business in Boulder County, and Boulder is the County designated in this Complaint.

## GENERAL ALLEGATIONS

6. On or about January 2, 2021, at approximately 4:06p.m., Plaintiff Collins was the restrained driver of an RTD bus traveling southbound in straight lane #2 on S. Federal Boulevard in Englewood, Colorado.

7. At or about that same time and place, Mr. Carl Andrew Peterson was driving a 2019 Porsche Cayman traveling westbound on W. Belleview Avenue approaching S. Federal Boulevard in Englewood, Colorado.

8. At or about that same time and place, Mr. Peterson disregarded the red light at S. Federal Boulevard and proceeded through the intersection at the same time as Plaintiff Collins.

9. Mr. Peterson struck Plaintiff Collins' bus in the driver's side front fender, causing significant damage to both vehicles, with the Porsche catching fire.

10. The damage to the bus was so severe that the bus had to be towed from the scene.

11. Witnesses reported that the Porsche was traveling 50-60 miles per hour at the time of the collision and that the Porsche struck the RTD bus who had the green light.

12. Following the collision, Mr. Peterson was cited with multiple traffic violations, including §42-4-1301, Driving Under the Influence of Alcohol, Drugs, or Both and a citation for §42-4-604, Failure to Obey Traffic Control Signal.

**EXHIBIT A**

13. As a direct and proximate result of the collision, Plaintiff suffered serious bodily injury and trauma including, but not limited to, headaches, abdominal pain, left shoulder pain, neck pain, and back pain in the cervical, thoracic, and lumbar spine.

14. As a direct and proximate result of the collision, Plaintiff has suffered economic losses and damages including, but not limited to, past and future lost wages, past and future medical expenses, and past and future out of pocket expenses.

15. As a direct and proximate result of the collision, Plaintiff has suffered non-economic damages including, but not limited to, past and future pain, suffering, inconvenience, emotional distress, and impairment of the quality of life.

16. As a direct and proximate result of the collision, Plaintiff has sustained damages for physical impairment and disfigurement.

17. At the time of the incident, Mr. Peterson was insured by State Farm Insurance for $100,000.00 in bodily injury coverage.

18. At the time of the incident, Plaintiff Collins was insured by Travelers for underinsured motorist coverage.

19. Prior to the January 2, 2021 collision, Plaintiff entered into a contract with Travelers, Policy Number 605205521-203-1 (herein after "the Policy"), which was in full force and effect at the time of the January 2, 2021 collision.

20. The Policy provides underinsured motorist coverage (hereinafter "UIM") to Plaintiff in the amount of $50,000.00.

21. Plaintiff purchased underinsured motorist coverage with Travelers in order to have security and protection in the event he was injured by an underinsured motorist.

22. Plaintiff timely notified Travelers of the incident and of the underinsured motorist claim.

23. On or about December 15, 2022, the liability insurance carrier for Mr. Carl Peterson offered his liability insurance policy limit.

24. On August 26, 2021, Plaintiff notified Travelers of his representation and requested certified copies of any and all policies and coverage.

25. On August 27, 2021, Travelers sent a letter via fax acknowledging receipt of Plaintiff's letter of representation and providing a copy of Plaintiff's policy declarations. Travelers notified Plaintiff of his duties after a collision and additional duties for uninsured motorist coverage.

**EXHIBIT A**

26. On August 31, 2021, Travelers faxed a letter which stated a certified copy of the Policy was enclosed. The fax was three pages in total and no policy documents were enclosed as claimed.

27. On October 1, 2021, Travelers sent a letter via fax indicating that it previously provided Plaintiff's certified policy and noted a provision regarding Plaintiff's obligation to identify any other applicable insurance coverage which would be the primary UIM coverage. Travelers indicated it would be pending the UIM claim at that time, as it was unsure if any applicable UIM coverage was available under RTD's insurance policy.

28. On July 19, 2022, Plaintiff sent a letter to Defendant Travelers notifying it that a demand for payment was sent to the underlying bodily injury insurance carrier, State Farm. Plaintiff included the demand submitted and requested (1) Travelers' consent to settle the claim in the event of a policy limit settlement offer and (2) Travelers' evaluation of Plaintiff Collins' claim for underinsured motorist coverage.

29. On August 12, 2022, Travelers sent a letter via fax notifying Plaintiff that it had not yet received the supporting documentation for Plaintiff's request for evaluation. Travelers also stated it previously forwarded a certified copy of the policy and that any coverage provided by Rapid Transit would be primary, per Plaintiff's policy. Travelers requested a copy of Rapid Transit's policy.

30. On August 13, 2022, Travelers faxed a duplicate of the August 12, 2022 letter, as identified above.

31. On August 16, 2022, Plaintiff sent Travelers a letter wherein Plaintiff acknowledged Traveler's request for proof, or lack thereof, of a policy with Rapid Transit. Plaintiff stated that it had reached out to Rapid Transit and were awaiting confirmation of whether or not a policy existed that would provide UIM coverage to Plaintiff Collins. Plaintiff again enclosed medical records, billing, and the declarations page from State Farm Insurance for it's policy with the tortfeasor in support of Plaintiff's request for an evaluation of Plaintiff's claim for UIM benefits. Plaintiff identified this as his second request for evaluation and requested a response on or before September 16, 2022.

32. On August 17, 2022, Plaintiff sent a letter via email to Travelers notifying it of a response from Rapid Transit (aka First Transit), which stated "First Transit declines UM/UIM coverage in those state which allow, including Colorado." Plaintiff enclosed the rejection of coverage provided by Rapid Transit. Plaintiff confirmed that there were no additional or primary UIM carriers and again reiterated a response to the most recent request for an evaluation on or before September 17, 2022.

33. On August 22, 2022, Travelers sent a letter via fax providing its consent to settle the underlying bodily injury claim pending a policy limit offer. Travelers acknowledged

4

EXHIBIT A

receipt of the rejection of UIM coverage for Rapid Transit. Travelers indicated that it had not yet received the supporting documents referenced in Plaintiff's request for evaluations.

34. On August 23, 2022, Travelers sent a letter notifying Plaintiff that it may utilize a medical bill review application during its evaluation of Plaintiff's claim for damages.

35. On September 9, 2022, Travelers faxed a letter dated August 22, 2022, wherein it stated it was unable to accept or reject Plaintiff's policy limit demand and requested additional documentation, including 5 years of prior medical records, wage loss documentation, and workers compensation report referenced in chart notes, in order to complete its review. Travelers included a medical records authorization in order to obtain Plaintiff's prior medical records. Travelers also notified Plaintiff of its intent to retain defense counsel to assist in securing a medical expert to opine on related injuries, treatment, future treatment, and impairment.

36. On September 12, 2022, Plaintiff notified Travelers that it requested prior records and an executed medical records authorization and would supplement both upon receipt. Plaintiff provided the workers' compensation report requested. Plaintiff acknowledged Travelers notification of its intent to retain defense counsel and medical experts, and requested that Travelers provide Plaintiff with the names of both the doctor and attorney it has or it intends to retain. Finally, Plaintiff again reiterated his request for an evaluation of his claim and a basis for the lack of evaluation thus far on or before September 19, 2022.

37. On September 16, 2022, Travelers sent a letter via fax confirming receipt of Plaintiff's most recent correspondence with workers' compensation report. Travelers again stated it was unable to accept or reject the policy limit demand and opined that Plaintiff was fully compensated by the underlying bodily injury settlement. Travelers stated that it would provide contact information for defense counsel once prior medical records were received.

38. On October 10, 2022, Plaintiff sent a letter to Travelers which included an executed medical authorization and Plaintiff's five-years of prior medical records. Plaintiff requested an updated evaluation of his claim for UIM benefits as well as undisputed funds on or before October 17, 2022.

39. On October 25, 2022, Plaintiff sent a letter to Travelers indicating that it was over one week past the most recent deadline given to respond to its request for an evaluation and identifying that Travelers failed to respond in any matter. Plaintiff requested a response with Travelers' evaluation and/or undisputed benefits on or before October 26, 2022.

40. On October 28, 2022, Travelers sent a letter via fax wherein it identified staff counsel Sandie Wathen (hereinafter "Counsel Wathen") who had been retained to assist in retaining a medical expert to complete a record review. Travelers stated it would provide Plaintiff with a copy of the report upon receipt and follow-up to discuss its review of the claim for UIM benefits.

**EXHIBIT A**

41. On November 11, 2022, Plaintiff sent a letter to both Travelers and Counsel Wathen requesting it identify the medical expert it has retained to complete a review of Plaintiff's medical records. Plaintiff requested Travelers provide its evaluation and/or undisputed benefits on or before November 18, 2022.

42. On December 15, 2022, Plaintiff sent a letter to both Travelers and Counsel Wathen notifying them that the underlying liability carrier offered its full policy limit on Plaintiff's claim for bodily injury, which Travelers pre-emptively provided its consent to settle on August 22, 2022. Plaintiff acknowledged Travelers and Counsel Wathen's lack of response to its prior requests and asserted his sixth request for an evaluation and any undisputed benefits to be provided on or before December 22, 2022.

43. On January 3, 2023, Plaintiff sent a letter to both Travelers and Counsel Wathen with his seventh request for an evaluation of his underinsured motorist claim and/or any undisputed benefits. Plaintiff stressed that Travelers failure to respond in any matter was causing further harm and requested the full policy limit be tendered on or before January 10, 2023.

44. On January 13, 2023, Travelers faxed a letter dated January 12, 2023 wherein it identified it had retained Mark Gauthier (hereinafter "counsel Gauthier") of the law firm of Ross-Shannon & Delaney, P.C. to assist in securing a report from a medical expert, as it identified a conflict with Counsel Wathen.

45. On January 13, 2023, Plaintiff sent a letter to Travelers identifying that Travelers' letter was untimely, that it has still not responded to any of Plaintiff's seven requests for evaluation, and now stated even more time is needed for its evaluation. Plaintiff questioned why it took Travelers nearly four months to properly retain counsel. Plaintiff questioned the need for an outside doctor to establish causation when Plaintiff's prior medical records show no prior injuries and when Plaintiff's primary treating physician has assigned liability for the injury and treatment to the collision in question. Plaintiff reiterated his now eighth request for an evaluation of his claim for UIM benefits and a tender of the full policy on or before January 17, 2023.

46. On January 18, 2023, Travelers faxed a letter dated January 17, 2023 to Plaintiff. Travelers responded to Plaintiff's question as to why it took nearly four months to properly retain counsel, stating it did hire counsel on October 28, 2022. Travelers again stated that it has requested assistance in retaining a medical expert to opine on injuries and treatments caused by or related to the collision in question, and that counsel Gauthier would be providing a written report once completed and once Travelers and counsel Gauthier have had an opportunity to review it.

47. On January 19, 2023, Plaintiff sent a letter to Travelers in response to its January 18, 2023 letter. Plaintiff acknowledged that Travelers did in fact provide contact information for Counsel Wathen, but questioned why it took Travelers over two months to identify a

**EXHIBIT A**

        conflict of interest. Plaintiff requested the name of the medical expert Travelers claims it is using to review his medical records. Plaintiff stressed that Travelers has continued to ignore time-limit demands for responses. Plaintiff stressed this is now his ninth request for an evaluation of UIM benefits and requested an evaluation and responses to each of its looming questions on or before January 26, 2023.

48. On February 14, 2023, Plaintiff sent a letter to Travelers via email noting that it failed to respond to Plaintiff's most recent letter. Plaintiff notified Travelers that he intended to file suit but offered Travelers one final opportunity to resolve the claim by offering the full policy limit on or before February 21, 2023.

49. On February 16, 2023, Travelers faxed Plaintiff a letter dated February 13, 2023 wherein it identified that its retained counsel had been in communication with Expert Sourcing Solutions, LLC to check the status of the medical record review being done by Dr. Brunworth and that the report would be forwarded to Plaintiff upon receipt.

50. On February 17, 2023, Plaintiff sent a letter to Travelers confirming receipt of its February 16, 2023 fax. Plaintiff stressed that it had requested Travelers' evaluation on no less than ten occasions and that Travelers continued to evade a response to fail to respond in any manner. Plaintiff reiterated his intent to file suit if a policy limit offer was not offered by end of business on February 21, 2023.

51. On February 20, 2023, Travelers sent an email to Plaintiff's counsel with the subject line James Collins – Claim No. IRF1942-003 which was blank and contained no attachments.

52. On February 20, 2023, Plaintiff responded to Travelers noting receipt of the email which was blank and contained no attachments.

53. On February 21, 2023, Travelers responded that the email was sent in error. Later that same day, Travelers faxed a letter in response to Plaintiff's February 17, 2023 correspondence. In its letter, Travelers indicated that it learned through counsel Gauthier that its expert report was expected by 2/27/23, and that not only would a copy be provided to Plaintiff upon receipt but that Travelers would reach out to Plaintiff to discuss the claim.

54. On February 28, 2023, Plaintiff sent a letter to Travelers indicating that nothing was received the day prior, as was promised by Travelers. Plaintiff asked when he could expect the report.

55. On March 1, 2023, Travelers provided Plaintiff with a copy of the report completed by Dr. Brunworth. Not only was Dr. Brunworth's report dated November 16, 2022, but it was also noted to have been forwarded to defense on November 16, 2022.

56. On March 1, 2023, Plaintiff sent a letter to Travelers confirming receipt of Dr. Brunworth's report and noting the failure to provide its evaluation of the claim. Plaintiff requested

**EXHIBIT A**

        Travelers' evaluation on or before March 2, 2023. Plaintiff also requested Travelers provide a list of all of the times that it has used Dr. Brunworth as an expert in both third- and first-party claims over the past five years.

57. On March 2, 2023, Travelers faxed a letter to Plaintiff offering $5,000.00 to settle Plaintiff Collins' claim for underinsured motorist coverage. Travelers stated that it is "not privy to the company's information in regard to the utilization of this medical expert" and provided that this is the first time Dr. Brunworth has been retained in any of its claims with this adjuster.

58. Based on the extent of Plaintiff's injuries and damages, a reasonably careful insurance company, including Travelers, would issue payment of the full UIM policy limit of $50,000.00 to Plaintiff for his claim for underinsured motorist benefits.

59. On information and belief, Travelers has failed to reasonably evaluate all aspects of Plaintiff's claim, and in turn has failed to evaluate and pay any underinsured motorist benefits to Plaintiff.

**FIRST CLAIM FOR RELIEF**
(Underinsured Motorist Claim/Breach of Contract against Travelers)

60. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

61. Plaintiff is entitled to recover his underinsured motorist benefits as provided in his insurance policy with Defendant Travelers.

62. Prior to the January 2, 2021 collision, Plaintiff entered into a contract for insurance as identified herein; whereby, Defendant Travelers provided UIM coverage to Plaintiff and promised to pay UIM benefits to Plaintiff in exchange for Plaintiff's payment of premiums.

63. At the time of the January 2, 2021 collision, Defendant Travelers insured Plaintiff for $50,000.00 in UIM benefits pursuant to the Policy.

64. Defendant Travelers has breached its contract of insurance by failing to pay a reasonable amount of UIM benefits that are owed to Plaintiff under the policy.

65. As a direct and proximate result of the damages sustained by Plaintiff in the January 2, 2021 collision, and as required by C.R.S. §10-4-609 and Defendant Travelers' policy, and as a direct result of Defendant Travelers's breach of contract, Plaintiff has suffered damages and Defendant Travelers is liable to pay UIM benefits to Plaintiff to compensate him for him injuries, damages, and losses.

**SECOND CLAIM FOR RELIEF**
(Common Law Bad Faith Breach of Insurance Contract against Travelers)

EXHIBIT A

66. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

67. Plaintiff entered into a contract for insurance as identified herein; whereby, Defendant Travelers provided underinsured motorist coverage to Plaintiff and promised to pay UIM benefits to Plaintiff in exchange for Plaintiff's payment of premiums.

68. Defendant Travelers acted willfully, wantonly, and unreasonably in failing to timely and reasonably pay all UIM benefits to Plaintiff arising from the injuries, damages, and losses sustained by Plaintiff in the January 2, 2021 collision and by continuing to delay and deny payment.

69. Defendant Travelers has refused to pay the full amount of Plaintiff's claim for underinsured motorist benefits without a reasonable basis.

70. Defendant Travelers acted unreasonably in handling Plaintiff's claim for underinsured motorist benefits in an unfair manner inconsistent with fair claims handling standards.

71. Defendant Travelers's conduct described herein was unreasonable and further violated C.R.S. § 10-3-1104(1)(h).

72. Defendant Travelers knew that its conduct described above was unreasonable or recklessly disregarded the fact that its conduct described above was unreasonable.

73. As a direct and proximate result of Defendant Travelers's bad faith conduct, Plaintiff has sustained injuries, damages, and losses.

### THIRD CLAIM FOR RELIEF
(Statutory Claim - Unreasonable Delay and Denial of Benefits Under
C.R.S. §§ 10-3-1115 and 10-3-1116)

74. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

75. Plaintiff is a first party claimant as defined under C.R.S. § 10-3-1115.

76. Plaintiff Collins and Defendant Travelers entered into a contract for insurance as identified herein, whereby Defendant provided underinsured motorist coverage to Plaintiff Collins, and promised to pay underinsured motorist benefits to Plaintiff Collins, in exchange for payment of premiums.

77. Pursuant to C.R.S § 10-3-1115, Defendant cannot unreasonably delay or deny payment of underinsured motorist benefits to Plaintiff.

78. Defendant Travelers delayed and denied Plaintiff's claim for underinsured motorist benefits without a reasonable basis.

79. Defendant Travelers violated C.R.S. § 10-3-1115 by delaying and denying payment of underinsured motorist benefits it owes to Plaintiff for the injuries, damages and losses suffered in the January 2, 2021 collision without conducting a reasonable investigation and evaluation of Plaintiff's underinsured motorist claim.

80. Defendant Travelers violated C.R.S. § 10-3-1115 by delaying and denying payment of underinsured motorist benefits it owes to Plaintiff for the injuries, damages and losses suffered in the January 2, 2021, collision without providing a reasonable basis for its delay and denial.

81. Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover reasonable attorney's fees, court costs and two times the covered benefits as a result of Defendant's unreasonable delay and denial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Collins prays for judgment against Defendant Travelers for relief as follows:

1. Benefits owed to Plaintiff for a breach of contract under the policies of insurance issued by Defendant Travelers for Plaintiff's economic damages, including but not limited to, past and future medical expenses, lost income, lost earning capacity, and out-of-pocket expenses; non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, mental and emotional distress and anguish, and inconvenience; physical impairment and disfigurement; all of which in an amount to be determined at trial;

2. Damages for common law bad faith;

3. Statutory damages as provided by C.R.S. § 10-3-1116, including costs, attorney's fees, and two times the covered benefits;

4. All other compensatory damages caused by Defendants' actions and inactions, to be proven at trial;

5. Pre-judgment and post-judgment interest as provided by law; and

6. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff James Collins, Jr. hereby demands a trial by jury on all issues so triable.

**EXHIBIT A**

Respectfully submitted this 6th day of March, 2023.

                                          **BURG SIMPSON**
                                          **ELDREDGE HERSH & JARDINE, P.C.**
                                          *(Original signature on file at Burg Simpson*
                                          *Eldredge Hersh & Jardine, P.C.)*

                                          */s/ Jessica B. Prochaska*
                                          Jessica B. Prochaska, Reg. No. 46319
                                          *Attorney for Plaintiff*

**Plaintiff's Address**
c/o Burg Simpson, P.C.
40 Inverness Drive East
Englewood, CO 80112

11

                                                                                                                                  **EXHIBIT A**